IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jacques Clinton, | ) | C/A No.: 1:11-1736-RMG-SVH |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | REPORT AND RECOMMENDATION |
| Richard Evans, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Jacques Clinton ("Plaintiff"), proceeding pro se and in forma pauperis, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Plaintiff alleges Richard Evans violated his constitutional rights while he was incarcerated at the Federal Correctional Institution (FCI) in Edgefield, South Carolina, a facility of the Bureau of Prisons (BOP). Before the court is Defendant's Motion for Summary Judgment [Entry #31]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) and (e) (D.S.C.), the undersigned is authorized to review such complaints for relief. Because the motion is dispositive, this Report and Recommendation is entered for review by the district judge.

I.  Factual and Procedural Background

Plaintiff filed his complaint in this action on July 19, 2011 and amended his complaint on August 12, 2011. Compl. and Am. Compl. [Entry #1]. Defendant filed his motion for summary judgment on February 6, 2012. [Entry #31]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond

adequately to Defendant's motion [Entry #32]. Plaintiff filed a response in opposition to Defendant's motion on April 27, 2012. [Entry #44]. This matter having been fully briefed, it is now ripe for disposition. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendant's motion for summary judgment be granted.

According to Plaintiff, Defendant performed a pat search on him in the A-3 housing unit area. Plaintiff alleges that Defendant touched his "'private parts' in a very inappropriate manner by running his hand up the 'crack' of the plaintiff's behind and grabbing and groping plaintiff's 'scrotum' in a massaging type manner." [Entry #1 at 3]. Plaintiff alleges that he asked Defendant not to touch him like that and Defendant responded, "'I can do whatever I wanna do.'" *Id.* According to Plaintiff, he reported Defendant's conduct to Lieutenant Willis who told Plaintiff he would take care of it. *Id.* Plaintiff alleges that Defendant was waiting for him when he returned from the recreation yard and confronted him about discussing the incident with Willis and stated that when Defendant returned from vacation "'we gonna handle this.'" *Id.* Plaintiff claims that he has suffered psychological trauma as a result of the alleged assault. *Id.* at 4.

Plaintiff amended his complaint on August 12, 2011 to add an additional claim against Defendant. Plaintiff contends that on July 17, 2011, while he was in the visitation area with his wife, he overheard Defendant tell another officer that Plaintiff had placed something in his pocket. [Entry #1-4 at 2]. According to Plaintiff, Defendant then told him that "this is what happens when you file lawsuits." *Id.*

2

II. Discussion

A. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow

3

the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B. Analysis

Plaintiff is bringing suit against the warden of a federal prison. As such, his constitutional claims are evaluated under *Bivens*. *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983. Therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-820, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994); *Bolin v. Story*, 225 F.3d 1234, 1241–42 (11th Cir. 2000); *Campbell v. Civil Air Patrol*, 131 F.Supp.2d 1303, 1310, n. 8 (M.D.Ala. 2001) ("the court shall refer interchangeably to cases" decided under both § 1983 and *Bivens*).

1. Exhaustion of Administrative Remedies

Defendant has moved for summary judgment based in part on the defense of Plaintiff's failure to exhaust his administrative remedies. The Prison Litigation Reform

Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement that must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The BOP has a three-tiered administrative grievance process. *See* 28 C.F.R. §§ 542.10 et seq. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint

to the warden within 20 days of the event giving rise to the grievance. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id*. If dissatisfied with the response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel. *Id.* Appeal to the General Counsel is the final level of agency review. 28 C.F.R. §542.15(a).

Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. *Jones*, 549 U.S. at 204. It also has the potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record. *Id.*; *Woodford*, 548 U.S. at 94–95. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved. *Woodford*, 548 U.S. at 95.

Here, Plaintiff has not properly exhausted his administrative remedies. On or about January 5, 2011, Plaintiff submitted a formal administrative remedy to the Warden at FCI Edgefield alleging an officer touched him inappropriately. [Entry #31-3 at 27]. This remedy was rejected because part of the exhibit was missing and it was untimely filed. *Id.* Plaintiff subsequently filed an appeal to the Regional Director and the Central Office, which both upheld the institution's rejection for being untimely. *Id*. at 28–29. Plaintiff submitted subsequent administrative remedies on February 15, 2011 and March 4, 2011 for sexual assault by an officer that were also rejected as untimely. *Id*. at 30–33.

On or about March 24, 2011, Plaintiff filed a sensitive administrative remedy to the Regional Director alleging he had been sexually assaulted by Defendant and had been disrespected by another officer. *Id.* at 34. It is not clear from the face of the remedy whether Plaintiff is grieving a subsequent instance of alleged sexual assault by Defendant, or whether he is complaining about the alleged lack of investigation from the July 22, 2010 incident. At any rate, the Regional Director responded to Plaintiff on May 23, 2011, informing him that due to the seriousness of his allegations of staff misconduct, his complaint was forwarded to the Office of Internal Affairs for review and disposition. *Id.* at 35. The response states that Plaintiff would not be privy to the information, findings, or outcome of the investigation, and provides Plaintiff with the address and time limit for appealing the response. *Id.* Plaintiff did not file an appeal of this remedy. Aff. Cassaro, ¶ 14 [Entry #31-3 at 6].

On or about August 11, 2011, Plaintiff filed an administrative remedy alleging he was being subjected to continued retaliation by staff at FCI Edgefield, but it was rejected for his failure to attach an informal resolution form. [Entry #31-3 at 36]. On or about September 15, 2011, Plaintiff resubmitted his administrative remedy, with an informal resolution form attached, claiming that on July 17, 2011, while with his wife in the visitation room, Defendant told a staff member to search Plaintiff's pockets for contraband. *Id.* at 37–40. On October 4, 2011, the Warden informed Plaintiff that his allegations of Defendant's misconduct had been reviewed for appropriate disposition in accordance with policy, but that he would not be provided information regarding the

7

disposition. *Id*. at 41. The Warden indicated the response was for informational purposes and advised him that any appeal must be received in the Regional Director's Office within 20 calendar days from the date of the Warden's response. *Id*.

On or about October 21, 2011, Plaintiff appealed the Warden's response to the Regional Director. *Id*. at 42. The response to this remedy was still pending at the time Defendant filed his motion. Aff. Cassaro, ¶ 16 [Entry #31-3 at 7]. Because Plaintiff did not receive a response from the Regional Director within the 60 day time frame (30 days plus a 30 day extension) according to policy, he was entitled to consider the absence of a response to be a denial at that level, and file an appeal to the Central Office. *Id*. Plaintiff has not filed an appeal to the Central Office regarding this issue. *Id*.

First, Plaintiff's administrative grievances regarding the July 2010[1] incident were rejected as untimely because Plaintiff was required to file the grievance within 20 days of the event and he failed to file his initial grievance for nearly six months after the incident.[2] The United States Supreme Court has addressed this precise issue and found that a plaintiff had not properly exhausted his administrative remedies under the PLRA

---

[1] In his complaint and amended complaint, Plaintiff does not allege what date Defendant allegedly touched him inappropriately. Defendant contends that the incident occurred on or about July 22, 2010 [Entry #31-6], and Plaintiff does not appear to dispute this date. Attached to Plaintiff's complaint is an affidavit he signed on September 11, 2010 that details the incident. Therefore, it must have occurred on or prior to that date.

[2] Plaintiff has not claimed, either in his administrative grievances or in his response to summary judgment, that the subsequent grievances concerned incidents other than the July 2010 incident. In fact, his March 4, 2011 grievance specified that the incident occurred on July 22, 2010. Although Plaintiff's response to summary judgment references an incident in April 2011 [Entry #44 at 2], Plaintiff has filed no grievances related to an April 2011 incident.

8

where he had not timely filed his grievance. *Woodford*, 548 U.S. 81. Specifically, the plaintiff in *Woodford* filed an initial grievance six months after the incident giving rise to the grievance, despite the prison policy's requirement that grievances be filed with 15 days of the incident. *Id*. at 86–87. In holding that timely exhaustion is required under PLRA, the *Woodford* Court held:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id*. at 95. Here, Plaintiff similarly failed to file his initial remedy within the 20 days required by the BOP policy and it was rejected on this basis. Therefore, Plaintiff has not properly exhausted his administrative remedies with regard to Defendant's alleged inappropriate touching.

Plaintiff has also failed to exhaust his administrative remedies with regard to his claim that Defendant told another officer that Plaintiff had something in his pocket during his visitation with his wife. The alleged incident occurred on July 17, 2011 and Plaintiff

filed his amended complaint on August 12, 2011 without first exhausting. Additionally, as of the date of this Report, there is no evidence that Plaintiff has attempted to exhaust his administrative remedies. In his response to summary judgment, Plaintiff provides no excuse or explanation for his failure to exhaust.

As Defendant has shown that Plaintiff did not properly exhaust his administrative remedies with regard to any of his claims and Plaintiff has failed to allege that administrative remedies were unavailable to him, it is recommended that Defendant's motion for summary judgment [Entry #31] be granted.

III. Conclusion

For the foregoing reasons, it is recommended that Defendant's motion for summary judgment be granted and this action be dismissed with prejudice.

IT IS SO RECOMMENDED.

July 9, 2012  Shiva V. Hodges
Columbia, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).